952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John PRUITT, Defendant-Appellant.
 No. 91-5339.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant John Pruitt appeals his mandatory minimum sentence of 60 months' incarceration, which he received following conviction for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(b)(1). We affirm.
 
 
 2
 * On March 29, 1990, Pruitt's cousin and co-defendant, Danny Zane Gray, who was in the business of dealing drugs, made arrangements with a state undercover agent to sell at least two pounds of cocaine that night in Lewisburg, Tennessee. Gray asked Pruitt and a Mr. Johnny Pointer to accompany himself and a Mr. Tony Wells to Lewisburg for the cocaine deal. Gray told them to bring guns and arrive around 10:30 p.m. At approximately that time, Wells and Gray arrived at the predetermined spot in one car and Pruitt and Pointer arrived in another. Gray approached the agent, sampled the cocaine and gave the agent $19,000 in exchange for the cocaine. As Gray and Wells were leaving the scene they were apprehended, and Pruitt and Pointer were subsequently arrested. Officers seized a fully-loaded .32 automatic pistol and a Smith & Wesson .357 Magnum from the car Pruitt was driving.
 
 
 3
 Prior to this offense, Pruitt had been living in Louisville, Kentucky with his wife and daughter. He had worked at Acme Auto Electric, where he rebuilt electric automobile parts, until 1988 when he was laid off. At that time, Pruitt became financially unstable and was forced to move into his mother-in-law's home. Soon thereafter, Pruitt borrowed money to buy a bus ticket to Brownsville, Tennessee, where he had strong family ties, left his wife and daughter with his mother-in-law, and went to find work in Tennessee. He hoped that there he could earn enough money to establish a home for his family.
 
 
 4
 On the trip down to Brownsville, Tennessee, Pruitt lost his wallet, which contained all his money and his return bus ticket. Upon arriving in Tennessee, Pruitt secured a stocking and janitorial job at his cousin Gray's market and moved into a rooming house with the goal to save money so he could move his family down to Tennessee. It was during this time that Pruitt was arrested.
 
 
 5
 On June 13, 1990, Pruitt and two others were indicted for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and for unlawfully carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). Pruitt originally entered a plea of not guilty, but subsequently entered a plea of guilty to Count I, possession with intent to distribute cocaine. In exchange, the United States agreed to recommend a two-level reduction for acceptance of responsibility pursuant to United States Sentencing Guideline (U.S.S.G.) § 3E1.1, and to recommend that the defendant be sentenced to the lower third of the applicable sentencing guideline range. On March 4, 1991, Pruitt was sentenced to 60 months' incarceration, the minimum mandatory sentence for possession with intent to distribute, pursuant to 21 U.S.C. § 841(b)(1)(B). Following release from custody, defendant is to be on supervised release for four years.
 
 II
 
 6
 Pruitt was sentenced pursuant to 21 U.S.C. § 841(b)(1)(B), which mandates a minimum five-year sentence for possession of cocaine with intent to distribute. Pruitt asked the court to depart from this mandatory sentence pursuant to § 5K2.0 U.S.S.G., but the court declined to do so, as departure under that section requires a motion by the government requesting departure, and none was made. The issue on appeal is whether the district court erred in sentencing Pruitt without considering his mitigating circumstances, even in the absence of a motion by the government.
 
 
 7
 The court refused to consider mitigating circumstances in sentencing Pruitt based on 21 U.S.C. § 841(b)(1)(B), which mandates that anyone who knowingly or intentionally distributes, or possess with the intent to distribute, a controlled substance involving 500 grams or more of a mixture containing a detectable amount of cocaine "shall be sentenced to a term of imprisonment which may not be less than five years and not more than forty years...."
 
 
 8
 Limited authority to depart from mandatory minimum sentences is provided in 18 U.S.C. § 3553(e), which states: "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation...." See United States v. Wade, 936 F.2d 169 (4th Cir.1991), cert. granted, 60 U.S.L.W. 3418 (Dec. 9, 1991). Pursuant to § 3553(e), section 5K1.1 of the Sentencing Guidelines provides:
 
 
 9
 Substantial Assistance to Authorities--Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 
 
 10
 § 5K1.1 U.S.S.G.
 
 
 11
 Congress has only authorized a downward departure below a mandatory minimum sentence upon a motion by the government based on substantial assistance provided by a defendant. "[t]he district court may consider a downward departure pursuant to section 5K1.1 only 'upon motion of the government.' " United States v. Levy, 904 F.2d 1026, 1035 (6th Cir.1990) (collecting cases), cert. denied, 111 S.Ct. 974 (1991). In other words, the court does not have the discretion to impose less than the designated mandatory minimum sentence. United States v. Contreras, 895 F.2d 1241 (9th Cir.1990). In addition, the constitution does not compel individualized sentencing for non-capital cases. Lockett v. Ohio, 438 U.S. 586, 602 (1978).
 
 
 12
 A more complicated issue would be presented if Pruitt contended that he had substantially assisted the government and was thus entitled to a motion for downward departure on those grounds. See United States v. Wade, supra. However, Pruitt rests his claim for a downward departure from his mandatory minimum sentence on 18 U.S.C. § 3553(b), as implemented by § 5K2.0 of the Sentencing Guidelines, which states:
 
 
 13
 Grounds for Departure (Policy Statement)--Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether or to what extent departure is warranted can only be made by the courts.... Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of the unusual circumstances, the guideline level attached to that factor is inadequate.
 
 
 14
 § 5K2.0 U.S.S.G. (November 1, 1991).
 
 
 15
 Pruitt claims that his level of involvement and activity in the drug deal was minimal. Pruitt, pointing to the Assistant United States Attorney's characterization of him as "a person who had no prior experience, who basically fell into the clutches of a big time dope dealer," wants this court to hold that his lack of prior experience and knowledge should mitigate his sentence.
 
 
 16
 We refuse to adopt such a holding, as § 5K2.0 is inapplicable in mandatory minimum sentence situations. § 5K2.0 applies to sentencing that is done according to applicable guidelines, not sentences required by a statute mandating a minimum sentence. Additionally, under § 5K1, even if the judge were empowered to depart downward without the recommendation of the government, Pruitt does not present factors on which the court could base a downward departure. Pruitt does not argue that he had been or could have been of any assistance to the government. Instead, he is asserting that he is a good person who was caught in a bad situation and that a five-year sentence is too harsh for his involvement in this cocaine sale. These character factors do not serve to mitigate under § 5K1.
 
 
 17
 Indeed, Congress has already factored into the sentencing guidelines a defendant's criminal history, by mandating a larger minimum sentence of 10 years in prison if the defendant had previously been convicted of a felony. 21 U.S.C. 841(b)(1)(B). The existence of different mandatory minimum sentences for offenders with different criminal histories thus has already taken into account questions of character. They cannot be taken into account again under § 5K1.
 
 
 18
 The language of 21 U.S.C. § 841(b)(1)(B) clearly requires a mandatory minimum sentence unless a motion is made by the government based on substantial assistance. No such motion was made here. We AFFIRM the district court's 60-month mandatory minimum sentence.
 
 
 
 *
 The Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation